# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JESS W. FELTNER, JR.,

                Plaintiff,

v.                                                           CIVIL ACTION NO. 2:17-cv-04619

CONSOL OF KENTUCKY, INC., et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Jess W. Feltner's ("Feltner") Motion to Remand, (ECF No. 7), and Defendant Consol Energy, Inc.'s ("CEI") motion to dismiss. (ECF No. 5.) For the reasons discussed more fully below, the Court **DENIES** Feltner's motion to remand. (ECF No. 7.) The Court further **GRANTS** CEI's motion to dismiss and **DISMISSES** Count II of the Complaint. (ECF No. 5.)

### I. BACKGROUND

Some time prior to August 4, 2015, Feltner was hired by Defendant CONSOL of Kentucky, Inc. ("COK"), CEI's subsidiary, as an equipment operator to haul rock at the Twin Branch surface mine in Mingo County, West Virginia. (ECF No. 7-3 at ¶ 6; *see also* ECF No. 6 at 7.) Feltner's position required him to operate a CAT 789 mining truck that Feltner alleges was owned by CEI. (*See id.* at ¶¶ 14, 20.) Feltner alleges that the mining truck's access ladder was defective and not properly maintained. (*See id.* at ¶¶ 14.)

On August, 4, 2015, Feltner was injured while climbing the access ladder on the mining truck. (*See* ECF No. 8 at 1.) The second rung of the access ladder failed, causing Feltner to fall. (*See id.*) During the fall, Feltner attempted to grab the access ladder with both hands, but was only successful with his right hand. (*See id.*) As a result, Feltner states that he felt a pull in his right arm and severe pain shoot down his right hip and leg. (*See id.*) Feltner alleges that he suffered severe and permanent injuries. (*See id.*)

Plaintiff filed the present action on July 31, 2017 in the Circuit Court of Mingo County, West Virginia, against COK and CEI. (*See* ECF No. 1-1.) Plaintiff, however, did not immediately serve his Complaint because, statutorily, he had to wait for a final award on his workers' compensation claim. (*See* ECF No. 8 at 2.) On October 18, 2017, Plaintiff received a final award from the State of West Virginia Workers' Compensation Office of Judges. (*See* ECF No. 7-2.) COK had thirty days to appeal the order. (*See id.*) On November 22, 2017, having received no notice of an appeal by COK, Plaintiff filed an Amended Complaint which alleged the following two counts: deliberate intent under West Virginia Code § 23-4-2(d)(2)(B) against COK (Count I) and negligence against CEI (Count II). (*See* ECF No. 7-3.)

Defendants timely removed the instant action to this Court on December 27, 2017. (ECF No. 1.) On January 2, 2018, CEI filed the present motion to dismiss Count II of the Complaint. (ECF No. 5.) Feltner timely responded to CEI's motion, (ECF No. 9), and CEI timely replied. (ECF No. 10.) On January 16, 2018, Feltner filed the present motion to remand, (ECF No. 7) to which CEI timely responded, (ECF No. 12), and Feltner timely replied. (ECF No. 13.) As such, both motions are fully briefed and ripe for adjudication.

As each motion is governed by different standards, the Court will address each motion separately. Because the Court must first determine whether it has jurisdiction over the instant action, the Court will address Feltner's motion to remand before turning to CEI's motion to dismiss.

## II. MOTION TO REMAND

In his motion to remand, Feltner argues that the 2015 Amendments to the West Virginia deliberate intent statute bar the removal of deliberate intention actions. (*See* ECF No. 8 at 8–12.) Specifically, Feltner argues that the 2015 Amendments' requirement that a plaintiff asserting a deliberate intent claim demonstrate that "a total whole person impairment level of at least thirteen percent as a final award in the employees workers' compensation claim" deviates from the common law, thus making deliberate intent claims an integral part of the workers' compensation scheme.[1] (*See id.* at 10.)

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir.1996) (citing 28 U.S.C. § 1441). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

The party asserting federal jurisdiction bears the burden of proving federal jurisdiction by a preponderance of the evidence. *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935

---

[1] Feltner also argues that the added venue requirement in 2015 Amendments also precludes removal because it requires that his claims to be brought in the Circuit Court of Mingo County, West Virginia. (*See* ECF No. 8 at 11–12.) However, the Fourth Circuit has stated that it is well settled that federal law determines whether 28 U.S.C. § 1445(c) bars removal and that states cannot "enlarge or narrow the categories of cases subject to removal" through definition or characterization. *Arthur*, 58 F.2d at 125. Thus, the Court does not find Feltner's venue argument persuasive.

(S.D. W. Va. 1996). Because removal of civil cases from state to federal court infringes on state sovereignty, federal courts strictly construe the removal statute and resolve all doubts in favor of remanding cases to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." (citation omitted)).

Under 28 U.S.C. § 1445(c), "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." In *Arthur v. E.I. DuPont de Nemours &Co.*, the Fourth Circuit addressed whether § 1445(c) bars removal of West Virginia deliberate intention claims. *See* 58 F.2d 121 (4th Cir. 1995). In resolving this issue, the Fourth Circuit first defined "workmen's compensation laws" as "a statutorily created insurance system that allows employees to receive fixed benefits, without regard to fault, for work-related injuries." *Id.* at 125.

The Court next examined the history of deliberate intention claims in West Virginia to determine whether deliberate intent arise under workers' compensation law within the meaning of § 1445(c). *See id.* at 125. In reviewing this history, the court observed that these claims are rooted in the West Virginia's Supreme Court of Appeal's decision in *Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d 907 (W. Va. 1978). *See Arthur*, 58 F.3d at 123. The Court further noted that, following the *Mandolidis* decision, the West Virginia legislature amended the Workers' Compensation Act to provide a statutory definition of "deliberate intention." *Id.* at 126. The Fourth Circuit found that "the legislature made clear that it was not removing *Mandolidis* suits from the 'common law tort system'" but instead simply intended "to create a legislative standard

4

for loss of [employer] immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct." *Id.*

Based on this historical and statutory analysis, the Fourth Circuit ultimately held that deliberate intention claims do not arise under workmen's compensation laws for the purposes of 28 U.S.C. § 1445(c) stating the following:

> To begin with, section 23–4–2(c)(2) does not prescribe any part of a workers' compensation claim as such claims were understood in 1958. Section 23–4–2(c)(2) simply serves to circumscribe the common law *Mandolidis* claim. It does not change the fundamental character of the claim, which is still preserved within West Virginia's common law tort system. The *Mandolidis* claim is filed in the courts, issues of fault are litigated, and there are no statutory limits on the type or amount of compensatory damages. It has none of the administrative, no-fault characteristics associated with a workers' compensation claim.
> Furthermore, as we discuss more fully below in part II.D., section 23–4–2(c)(2) is not integrally related to the operation of West Virginia's workers' compensation system. It does not protect or enhance the ability of workers to obtain compensation benefits, i.e., fixed benefits without regard to fault for workplace injuries.
> Accordingly, we hold that Code § 23–4–2(c)(2) is not a "workmen's compensation law[ ]" for purposes of 28 U.S.C. § 1445(c). It follows that the *Mandolidis* claim (as circumscribed by section 23–4–2(c)(2)) does not arise under "workmen's compensation laws."

*Id.* at 127–28.

Thus, in *Arthur*, the Fourth Circuit was clear in its finding that deliberate intent claims do not arise under workers' compensation laws and thus are removable. *See also Smith v. KWV Operations*, No. 2:10-cv-1351, 2011 WL 759580, at *2–3 (S.D. W. Va. Feb. 24, 2011). The Court does not find that the 2015 Amendments modify deliberate intent claims so much that they now arise under workers' compensation law. Similar to the 1983 Amendments involved in the *Arthur* decision, the 2015 Amendments simply set out alternative ways for an employee to prove an injury

5

for a deliberate intent claim. *Compare Arthur*, 58 F.2d at 126 (stating the two methods by which an employee can prove deliberate intent) *with* W. Va. Code § 23-4-2(d)(2)(B)(v)(I)–(IV) (stating the four methods by which "serious compensable injury" may be established.) The Court does not find that the addition of methods of proving injury in deliberate intent claims fundamentally changes the character of deliberate intent claims so much that it warrants a finding that they are now part of the workers' compensation process. *See Arthur*, 58 F.3d at 127. As in *Arthur*, the 2015 Amendments do not change whether issues of fault are litigated or set statutory limits on the type or amount of compensatory damages and thus do not add the earmarks of a workers' compensation claim. *See id.* Feltner has not provided any authority that counsels the Court to find otherwise.

Thus, applying *Arthur*, the Court **FINDS** that Feltner's deliberate intent claim is not a workers' compensation claim within the meaning of 28 U.S.C. § 1445(c). Therefore, the Court **FINDS** that Feltner's deliberate intent claim is removable. *See Arthur*, 58 F.3d at 128; *see also Smith*, 2011 WL 759580, at *2–3. Accordingly, Feltner's motion to remand is **DENIED**.

### III. MOTION TO DISMISS

In Count II of his Complaint, Feltner alleges that CEI acted negligently by failing to properly maintain or repair the mining truck that Feltner alleges CEI owned. (*See* ECF No. 7-3 at ¶ 22.) In its motion to dismiss, CEI argues that Feltner cannot state claims for negligence or punitive damages against CEI because it is entitled to immunity for negligence claims under West Virginia Code § 23-2-6a by virtue of being COK's agent.[2] (*See* ECF No. 6 at 6–9.)

---

[2] CEI also argues, in its motion to dismiss, that Feltner is precluded from recovering punitive damages for his negligence claim against CEI because CEI is immune from suit. (*See* ECF No. 6 at 8–9.) As discussed more fully below, the Court is dismissing the negligence claim against CEI. Therefore, the issue of whether Feltner can assert a claim for punitive damages against CEI is moot.

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

The West Virginia Workers' Compensation Act provides immunity for injury or death of any employee "however occurring" from lawsuits for employers that obtain workers' compensation insurance or makes direct payments of compensation. W. Va. Code § 23-2-6; *see also Bias v. E. Assoc. Coal Corp.*, 640 S.E.2d 540, 544 (W. Va. 2006) ("The Legislature intended for W. Va. Code § 23–2–6 (1991) to provide qualifying employers sweeping immunity from

7

common-law tort liability for negligently inflicted injuries."). Section 23-2-6a extends this immunity "to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention." § 23-2-6a.

CEI relies on the Supreme Court of Appeals of West Virginia's decision in *Wetzel v. Employers Service Corp. of West Virginia*, 656 S.E.2d 55 (W. Va. 2007) to argue that it is an agent of COK for purposes of § 23-2-6a. (*See also* ECF No. 6 at 4.) In that case, the Supreme Court defined an agent as "one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it." 656 S.E.2d at 60. Applying that definition, the court found that defendant was an agent of a self-insured employer, for workers' compensation purposes, because defendant was responsible for processing and making payments for workers' compensation claims. *Id.*

Feltner however argues that CEI was not a mere agent of COK and therefore does not qualify for immunity under the statute. (*See* ECF No. 9 at 2.) In support of his contention, Feltner directs the Court to this District's opinion in *Adkins v. Consolidation Coal Co.*, 856 F. Supp. 2d 817 (S.D. W. Va. 2012). (*See id.* at 3–5.) In that case, the Court found that a parent company was not an agent under § 23-2-6a and therefore was not entitled to the immunity afforded under that section. In so finding, the Court relied on the complaint's allegations that the parent company, Consol, was heavily involved in the operation of its subsidiary, Consolidation, and conducted the following analysis:

> Consol, as the parent company of Consolidation, is alleged to be the "controller" of the mine and directly provides safety, technical, and operational support and supervision to Consolidation at the mine. It is alleged that Consol and Moore owed a duty to Adkins and the other miners to provide such support and supervision

8

> to Consolidation so as to ensure that federal and state mine safety standards were complied with in order to protect the safety and welfare of all of the miners.
>
> . . .
>
> Though some of the allegations of the complaint may be construed as suggesting that Consol is the agent of its subsidiary Consolidation, the reverse is also true. The parent Consol is alleged to be the "controller" of Consolidation's Loveridge # 22 mine, from which it could be inferred that Consolidation is the agent of Consol. At the least, that allegation diminishes the defendants' theory that the allegations of the complaint establish the parent as an operational agent of its subsidiary—a relationship which neither Consol nor any defendant admit.

*Id.* at 826–27.

The present case is more akin to *Wetzel* than *Adkins*. The issue in *Adkins* was whether the decision in *Wetzel* would afford "'agent' immunity to a worker's compensation guarantor-administrator not only for that purpose, but also for assisting the employer in the operation of the employer's business." *See id.* at 826. However, here, the Complaint does not allege that CEI was involved in COK's operations other than providing workers' compensation benefits to COK's employees and owning the mining truck that COK hired Feltner to operate. (*See* ECF No. 6 at 7; ECF No. 7-3 at ¶ 20; ECF No. 10 at 3–4.) Therefore, in this context, CEI was simply acting as COK's agent. *See Wetzel*, 656 S.E.2d at 615.

Furthermore, CEI cannot be said to be the "controller" of COK's operation simply by virtue of CEI owning and providing mining equipment to COK. This falls short of the allegations in *Adkins* which stated that the parent company "directly provid[ed] safety, technical, and operational support and supervision" to its subsidiary. *See Adkins*, 856 F. Supp. 2d at 827. To find CEI acted as more than an agent in the present case would allow any parent company who simply provides equipment or property to its subsidiary without any further involvement or say in the use of that equipment or property to lose immunity under § 23-2-6a. Therefore, the Court **FINDS** that CEI acted as an agent of COK and is thus entitled to immunity under § 23-2-6a. As the Court

9

finds CEI is immune under § 23-2-6a, Feltner cannot assert a claim to relief for negligence against CEI. Accordingly, the Court **DISMISSES** Count II of Feltner's Complaint.

### *IV.  CONCLUSION*

For the reasons herein, the Court **DENIES** Plaintiff's motion to remand.  (ECF No. 7.) The Court further **GRANTS** Defendant's motion to dismiss and **DISMISSES** Count II of the Complaint.  (ECF No. 5.)  As CEI is only named in Count II of the Complaint, the Court further **DIRECTS** the Clerk to remove CEI as a party to this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 15, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE